Julian Depot Miami v. Home Depot U.S.A. Mr. Waldman. Yes, Your Honor. Good morning. Good morning. Thank you. Good morning. May it please the Court, Glenn Waldman of Waldman Barnett on behalf of the appellant Julian Depot of Miami, LLC. Your Honors, this matter is before you for de novo review and this is really about the interpretation of the party's ground lease, which was a negotiated document which took over a year and a half to consummate. Before we get into the substance here, can we discuss the jurisdiction? The question is, what is the injury to you as a result of the particular judgment that was issued here? Okay, sure. The injury, well, our position, Your Honor, is that if the court had found that they breached the agreement, because we believe that an obligation to rebuild, which we understand we can't get specific performance for, if we, if they did not do that, the default remedy is that the lease is to be extended and continue forward after the conclusion of the prior periods until such time as they rebuild or all the extensions are out. So the damage... I'm sorry, Your Honor? I got it, I got it. Thank you. Okay, sorry about that. All right, I'm sorry for cutting you off. I didn't mean that. It's hard in this scenario. I'm doing my best. That's okay. I understand completely and I appreciate the answer. Okay. All right, if I may continue. Thank you, Your Honor. In any event, we think that Judge Scull is a fantastic judge, but we respectfully believe that he misread and misconstrued the ground lease and believe you're new should lead to a reversal. In reviewing the lease... Let me tell you where I'm having a problem with your case. So Article 10, both parties agree, has some relevance here. Your opponent would say it's pretty much the beginning and end of the situation. Fair enough. You say that the by using the term shall in connection with rebuilding and restoring the retail building, it means the tenant was obliged to do so. One problem I have with your argument is that shall is then immediately followed by the lease to suggest that shall is not being used in its ordinary mandatory sense, but in a permissive sense. It's really hard to read shall as must when it's followed by that phrase. And then you have a provision of the lease that says Article 7.3 provides, and this is a non... what it's referred to for those of us who took Latin in high school as a non-abstante clause, not withstanding any provision contained herein or any other documents to the contrary, tenants shall have no obligation to construct any improvements upon the premises or open or operate in the premises. And those to me are the biggest problems you have. Your Honor, I agree that they are the... they're really at the crux of this entire appeal, frankly, 7.3 and 10.1. And so I will address those right now, and I'll jump the rest of my opening, I'll get right to it, and that's all fine and good, and I look forward to doing that. So do you care which order I take them in, Your Honor? Would you like me to do 10.1? You know, help me the best way you can. Okay, all right, so if I can, I want to... and let's just deal with 7.3 and 10.1 because I really think those are the two most critical aspects of this entire appeal, and I think it turns on that because obviously those are the two areas where we significantly disagree with what Judge Scullin wrote, and that's what I want to talk about. And also 8.9 comes into play also, but let me get through the first two, and let's start with 7.3 because I think that's really where this all really begins. And as you correctly pointed out, under... at the beginning of 7.3, we have the following statement, notwithstanding any provision contained herein or any other documents to the contrary, tenants shall have no obligation to construct any improvements, and that's with the small i, and I'll get to that in a second, upon the premises or open or operate in the premises. Nevertheless, the economic consequences of filling open or operate are as follows, and then it goes into it. And now what's critically important here is really what this paragraph does, is it does two different things. It has two different sets of time frames. The first time frame, which is dealt with in A, deals with if they never build at all because they did not have an obligation to build at all. If they didn't build, that's what Section A deals with. So, you know, we have... and I think that's where Judge... It doesn't... it doesn't... the language doesn't limit it to that, it doesn't... and I respectfully... I hear you, and I'm getting there. So let me just walk through this one little thing and I'll get directly to that. So from my perspective and our perspective, if you look at 7.3, you really have Section A, which deals with before you build, whether you're going to build or not build, and then Sections B and C, which B starts with if after the constructing the retail building and opening a Home Depot, so forth, and the same with C. So B and C are... involve a scenario where you've actually built, and there was not a requirement... there was this period of time where Home Depot had to make a decision whether they were going to build or not, and ultimately, obviously, they decided to build, which from my perspective takes A out of the mix. Now let me address your issue because the critical thing here is, and if we have to go back to 3.2C to look at it for the first instance, we have a definition, and a definition of capital. All right. Yeah, the whole capital lowercase, I think, escapes me. All right, well, let me try to un-escape you if I can on that. I understand if I can't, because look, in 3.2, it defines improvements and it has language in C about under improvements and includes a small i and fixtures and all these other things, and it's defined as improvements with a capital I. There's no separate definition of lowercase improvements, is there? No, but that's why I want to take you with me to 7.5 for a moment, if I can, please. Wait, let me stop you for a second. Is your point here that if it has a capital I for improvements, then it's used as defined specifically for purposes of the contract, and if it has a lowercase I, it's used in the general publicly accepted usual definition? Is that what your point is? Very close to that, yes, Your Honor. The answer is it's a defined term as capital I, which means things that are actually done. When it's that has a small i, it's things that haven't been done yet, and that's pretty close to what you said, and that's exactly what you have, because if you look at 7.5, which is two sections down in A, dealing with requirements, you have within that same sentence both the capital I and the with removal of any improvements, which are things that have already been done, and the small i deals with things that have not been done yet, and if you look at the entire agreement, including the key sections 8, 9, and 10, 1, they all have situations where they use the capital I. It is a defined term under 3.2, and it is not the capital I that is used in 7.3. I mean, 8.9, for example, in B, says, tenants shall construct or cause to be constructed new capital I improvements. That means they haven't been built yet. 8.9B. I'm sorry, where are you, Your Honor? 8.9B. Tenants shall construct or cause to be constructed new improvements. No, it says no. Go ahead. So that upon completion of such new improvements, the improvements, it's referring to something that hasn't been built yet? No, Judge. Respectfully, it says new or replacement improvements. Replacement improvements are things that have already been done. But it's talking about something that hasn't been done yet. I hear you, Your Honor. I understand your position, and what I'm trying to say about 7.3 is that from our perspective, it is the small I, and that is something that wasn't constructed, and that's precisely how this section is developed, with A being when you haven't yet built, and B and C being when you have built. So they're not... I'm sorry, but I want you to get to this issue. Can you address Judge Pryor's question about the meaning of added selection and how it does not affect the shall language, please? Yeah, I was about to get there, and thank you very much for directing me there. Yeah, I'm a simple guy. I went to school. I wasn't very good at English back in the day, but I always was taught that when you use, you know, two parentheses, two commas, it should be like the sentence read without them in there. Otherwise, it's not going right. So shall its selection, then it's a comma, and at its expense, rebuild. To us, this is shall its selection rebuild. At its expense and election expense means expenses there, as election means win, because I think it's And if you look down a little further, about eight lines in, it says tenant shall, and there's no there's no may here, shall within 24 months from the date of such damage or destruction, or within shorter period of time, as shall be reasonable, use all insurance proceeds to restore or cause restoration of all capital improvements then existing on the premises, and it goes on to say it. But can you address the meaning of added selection, please? Sure, added selection to us, to me, means at their timeframe. That doesn't mean they have to do it tomorrow, they have 24 months to do it in. Added selection simply deals with the timing of when they're supposed to do it, and at its expense, and it's at elections, then they could never do it. And then, and the timing is totally within their control, then they can postpone it indefinitely. Respect, well, yes and no, respectfully, your honor. Yes, if they do, then they're in breach of the debt and the and the remedies that we assume. When do you know if they're in breach? If it's at their election, how do you know it won't be tomorrow, forever? 24 months, judge, you got to look at the rest of the paragraph. The rest of the paragraph gives them 24 months, and then you go to 8.9, which tells you specifically when they're supposed to do it. No, but then, if they have to do it within 24 months, it's not really at their election by time, is it? I mean, you've given them a time. Well, what can added selection then refer to? It means they could start tomorrow, they could start in 23 months, or they could start in 22 months, your honor. I believe that's what it means. I believe it gives them the opportunity. It's saying, you've got to figure out when you want to do it, but you have to do it. Okay, your honor is based on seven minutes. You can finish that, Mr. Waldman. Yeah. Can I? Take a minute. All right, so judge, from my perspective, it simply means they get to decide when within, and to read these all as Mays, when they are all shalls within 10-1, I just don't think that's a proper reading of it. I just don't think that gives construction to the entirety of the agreement, so I will just conclude by saying that... You stay four minutes for rebuttal. Let's hear from Miss Peterson. And I'll stop. Thank you, your honor. Miss Peterson. Good morning. May it please the court, my name is Jennifer Peterson on behalf of the Home Depot. Home Depot is asking you to affirm the district court today based on what the parties agreed in this ground lease contract. Notwithstanding means notwithstanding. No obligation to construct means no obligation to construct, and added selection means added selection. I think it's with that last point that I'd like to begin. I appreciate JDM's candor here. They acknowledge that added selection has to be read as when it elects, or perhaps how it elects, in order for them to have any chance of enforcing an obligation to build. But Judge Roy's mom, as you pointed out, it really doesn't make sense in context to read it as when it elects to because the contract goes on to spell out when it when it has to build. It must build within 24 months. Similarly, there's no grounds to read it as how it... If it elects to do so. Right. That's the way you're reading it. So the way to read those together is if it's going to be rebuilt, if it elects to do so, it needs to do so within 24 months. That's correct. And 10.1 goes on to explain how Home Depot must rebuild it. It must use the insurance proceeds. It must rebuild the building to as good a condition as before. It must continue to pay rent. So there's also really no how it elects to any manner, meaning left to read into added selection. Really the only sensible way to retain added selection in this paragraph is to read it as if Home Depot elects to rebuild. Any other reason... If the Home Depot elects not to rebuild, then the insurance proceeds go to JDM? Yes. Home Depot has consistently conceded that JDM is entitled to the proceeds of the insurance, the value of the building, at the end of the lease. I'm sorry. What do you make of the use of the capital I versus the lowercase I? I mean, surely it must mean something. The agreement goes to the trouble of spelling out the meaning of improvements with a capital I, and it's used with a capital I and a lowercase I in the notwithstanding clause. What do you make of that? Well, to me, when I see a that there's a purpose, and I think it is this, 3.2C defined the capital I improvements as the premises plus improvements. So I think the only reason to use the lowercase I in 7.3 is just to avoid the rather silly reading that Home Depot has no obligation to construct premises upon the premises. If they had used uppercase I, that would be the full meaning of that defined term. As it is, that would be a silly thing to have to point out, and the salient point here is that Home Depot has no obligation to construct improvements upon the premises. This notwithstanding clause really could not be broader with respect to Home Depot's obligation to build. This is what notwithstanding clauses do. They, contrary to what JDM has argued, they don't just serve to narrow or limit contractual provisions. They are capable of negating them. As the Supreme Court explained in the Cisneros case, a notwithstanding clause signals the intent, quote, to override conflicting provisions. And that's certainly what this one signals. It doesn't say here in 7.3, notwithstanding any provision that may be slightly broader. It says, notwithstanding any provision to the contrary. The overall tenor of this agreement absolves Home Depot of an obligation to rebuild, absolves Home Depot of any obligation to build in the first place. We can also point to section 8.4, which also says that Home Depot shall have the right but not the obligation to build. That, going along with that, Home Depot's not trying to shortchange anyone, of course. The parties who were sophisticated and counseled parties negotiated this document, as JDM pointed out, over a year and a half with very competent counsel. And they thought through what might happen if Home Depot exercised its option not to build or not to rebuild. And they wrote consequences into the lease. 7.3b entitles JDM to an enhanced rent payment for the duration. 7.3c allows JDM the option to terminate the lease to find a new tenant who will bring customers into the shopping center, who will build to suit, who will operate a business. All the things that JDM says at once here. JDM is trying to have it both ways. It concedes in one breath in its briefing that this is a meaningful consequence. It argues in the next breath that it's not an adequate remedy. But the lease says what it says. We maintain that it is unambiguous, as JDM maintained in the district court. And we would ask you to affirm, based on the broad notwithstanding clause, based on the fact that 10.1 gives Home Depot the election whether to rebuild or not. Council, I have a question for you. In section, I want to go back to the improvements question. In section 7.3c of the agreement, in the little sub I guess near the bottom, it says the term tenant's investment shall mean the consummating this lease transaction, in consummating the improvements with a capital I, in performing tenant's obligations under the development agreement, and thereafter from time to time in making permanent improvements lowercase i to the premises. In constructing the improvements, if it suggested the premises and the buildings, etc. on it, how does that make sense in that construction? Well, you're referring to the use of the lowercase in the clause you just read. The term tenant's investment shall mean the aggregate out-of-pocket sums invested by tenants, both hard and soft costs, in consummating this lease transaction, in constructing the improvements capital I, in performing tenant's obligations, etc. So it's really that in constructing the improvements. They're clearly, they're not constructing the premises. So what could that mean there? Well, it's defined in 3.2 as improvements plus the way to read it is the improvements. I don't think that there's any question about the application of this clause in this appeal though, to be clear. Yeah, the problem I had with this, with the capital I and the lowercase i, is it does seem to me, Judge Rosenbaum's pointing out, that maybe the distinction you drew, Ms. Peterson, doesn't really work, but it's not clear to me for the reason that, you explained to your adversary about the reading in 8.9, his reading doesn't really work either. The more I look at, if I try to make sense of all the lowercase and uppercase i's, I can't draw a meaningful distinction. It looks to me like maybe it's just sloppy drafting. Well, Chief Judge Pryor, it's certainly a lot went into this, and what we have here is what we have here. This at least says what it says. The important point is that it is completely sensible. It is our reading of 7.3 that harmonizes with the entirety of the contract, the entirety of Home Depot's overriding obligation not to rebuild or build. It's this contract. Not only do you have to rewrite or limit this very broad notwithstanding clause, you have to rewrite or limit section 8.4, which says that Home Depot has the right but not the obligation to rebuild, and you have to creatively rewrite section 10.1 to delete or significantly restrict the phrase at its election to the point of meaningless and absurdity. That will not do. The court is required to make as much sense of as many provisions as is possible, and we submit that that is what Home Depot's reading of this contract does. Yeah, I agree with all that. I guess my only point was it did not appear to me that if you read the entirety of the contract and you read every reference to capital I improvements versus lowercase improvements, that you could really end up drawing a meaningful distinction between the two. Is that possible? That's certainly possible, Chief Judge Pryor. Okay, Ms. Peterson, do you have anything further for us? If there's no further questions, I'll rest on our briefs. Thank you. Thank you. Mr. Waldman, you have four minutes. Thank you very much, Your Honor. I appreciate it. Mr. Waldman, before you get started, can I take you in a little bit of a different direction? Absolutely. I'm going to refer now to the REA restriction agreement. Okay. Can I focus your attention there for a moment? Sure. Do you consider that to be part and parcel of the lease agreement? Yes, sir. Yeah, three documents are all executed together. Absolutely. Can you can you refer to section 13.1 of the REA? Give me one second. I'll get there to you, Judge. I'm with you. Specifically, the REA provides that if any of the buildings are destroyed or damaged, Home Depot will promptly either, one, repair the building, two, rebuild the new building, or three, raise the building. I see that, Judge. Does it require anything more? They're entitled to do that without any further consequence. They chose option three. Bingo. That's what this option three says, raising of any damaged building, but they still, Your Honor, even if they do that, they still have the obligations, I believe, under the ground lease, which is to either rebuild, and if they don't, then they're obligated to pay, and they continue forward by paying through the extensions, which is what we were talking about. But I hear you. Where does it say that? Because what I see further in 13.1B provides that if it must put such portion of a shopping center in clean, sightly, and safe condition. It does not provide that Home Depot is required to rebuild at any point after deciding to raise the retail building. I hear you, and I still think it's harmonious with the obligations under the ground lease, which is the primary option. Two minutes remaining. Okay. Thank you. All right. If I may, I have two minutes, so I'll go to Judge Pryor. I still, it says, notwithstanding any provision contained herein or any other document to the contrary, Tensha will have no obligation to instruct any improvements. And that's what it says with the small. They didn't have an obligation to build at all, I agree, but they did build. So once they built, this is merely a modifier, is all it is. If you don't build, you don't have the obligation, but once you do, you're subject to the other terms of the agreement, and that's what I believe this says. You have to read the contract as a whole, and I believe that's critically important. Likewise, 10-1, again, we are taking, you have to take each of these shalls and make them a may, and I don't see how you do that. An added selection, again, means they get the right to figure out when the heck they want to do it, and I think that's all it says. As for the insurance proceeds, they didn't even, they self-insured. There are no proceeds. There's nothing for them to give us because they haven't done it. And again, the concept here is under 3-2 and 8-5, they were, we were getting the rights to the building. That was one of the negotiated terms. The asset, the big box, was a very significant thing here, and that was one of the major things negotiated as part of the entire lease, which needs to be read together. So if they don't rebuild, we don't get the asset, which was part of the consideration for this agreement as it was negotiated. So I think it's critically important to understand that we didn't get the benefit of the bargain that the parties agreed to, and for them to say that simply, oh, we'll pay a little additional rent now, you can terminate us anytime you want, that's not what the lease contemplates. And again, under 10-1, it's a shall rebuild. And if you look at this couple sentences down, it's a shall within 24 months, not if they want to or not, or may, it's a shall. So for all those reasons, respectfully, Your Honor, I don't believe we got the benefit of the bargain that we were entitled to. I believe that if you read the document as a whole, it clearly establishes that they had an obligation. Counsel, counsel, counsel. Yes, Your Honor. Yes, Your Honor. Absolutely. Is Julian Depot a party to that original agreement, agreement with the three options in it? They were not a party to the original agreement, Your Honor. However, under section, and I'll find it in this section in a second, there was a somewhere in 23, there was a right for assignees to step into the agreement, and by virtue of our purchase of it, we became the proper party in interest, Your Honor. Thank you. Okay, Mr. Waldman, I think we understand your case. I think you do. Thank you. Thank you for your time, Your Honor. We appreciate it. Thank you.